FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 10, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HARRY W.,[1]

               Plaintiff,

     v.

ANDREW M. SAUL, the Commissioner
of Social Security,

               Defendant.

No.   4:19-CV-5202-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Harry W. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) discounting Plaintiff's symptom reports; and 3) improperly assessing Plaintiff's residual functional capacity and therefore erring at step five. In contrast,

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 10 & 11.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1
2
3
4

Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 10, and grants the Commissioner's Motion for Summary Judgment, ECF No. 11.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

---

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II application, alleging an amended disability onset date of December 22, 2009.[18] His claim was denied initially and upon reconsideration.[19] An administrative hearing was held before Administrative Law Judge Lori L. Freund.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Plaintiff met the insured status requirements through December 31, 2015;

- Step one: Plaintiff had not engaged in substantial gainful activity since December 22, 2009, the amended alleged onset date, through his date last insured of December 31, 2015;

- Step two: Plaintiff had the following medically determinable severe impairments: fibromyalgia; rheumatoid arthritis, without synovitis;

---

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 46.

[19] AR 88 & 101.

[20] AR 16-79.

right shoulder plica syndrome; right knee meniscal tear, status-post

arthroscopic surgery; obesity; and degenerative disc disease of the

lumbar spine, status-post remote fusion;

- Step three: Plaintiff did not have an impairment or combination of

    impairments that met or medically equaled the severity of one of the

    listed impairments;

- RFC: Plaintiff had the RFC to perform light work except:

    > [Plaintiff] could stand and walk up to 20 minutes a time for a
    > total of two hours total in an eight-hour workday. He could
    > sit up to six hours in an eight-hour workday. He would need
    > to change positioning every 20 to 30 minutes for a brief
    > period. He should never kneel, crouch, crawl, or climb
    > ladders, ropes, or scaffolds but could occasionally balance,
    > stoop, and climb ramps and stairs. He could bilaterally
    > handle and finger frequently. He should avoid concentrated
    > exposure to extreme cold and excessive vibration; all
    > exposure to unprotected heights and hazardous machinery;
    > and even moderate exposure to the operational control of
    > moving machinery.

- Step four: Plaintiff was not capable of performing past relevant work;

    and

- Step five: considering Plaintiff's RFC, age, education, and work

    history, Plaintiff could perform work that existed in significant

    numbers in the national economy, such as office helper, parking-lot

    attendant, and cashier II.[21]

---

[21] AR 112-19.

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinions of testifying expert H.C. Alexander, III, M.D., Amanda Friese, PAC, William Kalichman, M.D., and Norman Staley, M.D.; and

- little weight to the opinions of Chester McLaughlin, M.D., Maria Armstrong-Murphy, M.D., Clarence Fossier, M.D., Thomas Griztka, M.D., and Scot Van Linder, M.D.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which accepted review and adopted the ALJ's decision.[24] Plaintiff timely appealed to this Court.

---

[22] AR 115-16.

[23] AR 113.

[24] AR 4-6.

1

2

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

-------------------

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

## A.    Medical Opinions: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ erred in failing to assign weight to the opinions of Kathleen Foltz, SDM, Wing Chau, M.D., and Owen Higgs, M.D. Plaintiff also challenges the ALJ's assignment of great weight to Amanda Friese, PAC and William Kalichman, M.D.

### 1.    Standard of Review

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[33] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both

---

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

1
2
treating and examining opinions are to be given more weight than the opinion of a
reviewing physician.[34]

3
4
5
6
7
8
9
10
11
12
    When a treating physician's or evaluating physician's opinion is not
contradicted by another physician, it may be rejected only for "clear and
convincing" reasons, and when it is contradicted, it may be rejected for "specific
and legitimate reasons" supported by substantial evidence.[35] A reviewing
physician's opinion may be rejected for specific and legitimate reasons supported by
substantial evidence, and the opinion of an "other" medical source[36] may be
rejected for specific and germane reasons supported by substantial evidence.[37] The
opinion of a reviewing physician serves as substantial evidence if it is supported by
other independent evidence in the record.[38]

---

[34] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[35] *Lester*, 81 F.3d at 830.

[36] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable
medical sources are licensed physicians, licensed or certified psychologists, licensed
optometrists, licensed podiatrists, qualified speech-language pathologists, licensed
audiologists, licensed advanced practice registered nurses, and licensed physician
assistants within their scope of practice—all other medical providers are "other"
medical sources.).

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ must evaluate every medical opinion received according to a list of factors set forth by the Social Security Administration.[39] "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."[40]

The harmless error analysis may be applied where even a treating source's opinion is disregarded without comment.[41] An error is harmful unless the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination."[42] This does not preclude the reviewing court from considering other factors in the harmlessness analysis, including whether the omitted evidence was cumulative of other testimony.[43]

---

[39] 20 C.F.R. § 416.927(c).

[40] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

[41] *March v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015).

[42] *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

[43] *Molina*, 674 F.3d at 1119, 1121 ("[I]f an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations.").

As discussed below, the Court finds Plaintiff fails to establish that the ALJ consequentially erred when weighing the medical opinions.

2.  <u>Kathleen Foltz, SDM</u>

Plaintiff argues the ALJ erred in failing to assign weight to Ms. Foltz's opinion.[44] Plaintiff is correct in that the ALJ did not assign a weight to the opinion of Ms. Foltz', however, any error is harmless.

Ms. Foltz opined Plaintiff had an RFC with the following exertional limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for 2 hours; sit (with normal breaks) for 6 hours in an 8-hour workday; push and/or pull (including operation of hand and/or foot controls) unlimited, other than shown; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; limited to frequent fingering and handling; avoid concentrated exposure extreme cold and hazards; and unlimited exposure to extreme heat, wetness, humidity, noise, vibration, and fumes.[45]

---

[44] ECF No. 10 at 11.

[45] AR 84-86.

An ALJ may not accord any weight to the opinion of a non-physician SDM, such as Ms. Foltz.[46] Furthermore, the ALJ constructed a more restrictive RFC compared to Ms. Foltz's opined limitations.[47]

Plaintiff's fails to establish the ALJ erred by failing to assign a weight analysis to Ms. Foltz's opinion.

### 3.    Dr. Wing Chau

Plaintiff also argues the ALJ erred in failing to assign weight to Dr. Chau's opinion.[48] Plaintiff is correct in that the ALJ failed to assign a weight to Dr. Chau's opinion, however, any error is harmless.

---

[46] *Morgan v. Colvin*, 531 Fed.Appx. 793, 794-95 (9th Cir. 2013) (unpublished) (citing POMS DI 24510.050 ("SDM-completed forms are not opinion evidence at the appeal levels.")).

[47] *See Montalbo v. Colvin*, 231 F. Supp. 3d 846, 861 (D. Haw. 2017) (ALJ's rejection of a treating and examining physicians' opinion when assessing claimant's application of SSI benefits was not harmless error, where there was a conflict in medical evidence; rejected opinions, if credited, could have suggested more restrictive RFC than the ALJ found; the ALJ failed to set forth specific and legitimate reasons for rejecting opinions; the court could not reasonably discern the path the ALJ followed in weighing evidence; and could not confidently state that no reasonable ALJ would have reached a different conclusion.).

[48] ECF No. 10 at 11.

1

2      Dr. Chau treated Plaintiff from 2008 to 2009 and from 2011 to 2016.[49] In

3   2011, Dr. Chau opined Plaintiff was temporarily unable to work as a Dial A Ride

4   Driver.[50] In May 2012, Dr. Chau opined Plaintiff was able to perform modified

5   work from May 2012 to July 2012, with the following restrictions: never climb,

6   twist, bend/stoop, squat/kneel, or crawl; occasionally (1-3 hours) sit, stand/walk,

7   reach, work above shoulders, and vibratory tasks; and frequently (3-6 hours)

8   keyboard, wrist flexion/extension, grasp, fine manipulation, and operate foot

9   controls with left foot.[51] In December 2012, Dr. Chau opined Plaintiff could perform

10  the jobs of a medical assistant and phlebotomist.[52] In June 2014, after an MRI, Dr.

11  Chau took Plaintiff off of clinical work and opined that Plaintiff might need a

12  vocational counselor to get more of a sedentary job and was capable of office type

13  work.[53] In November 2014, Dr. Chau approved Plaintiff to work as a support

14

15  ─────────────────

16  [49] AR 395-419 & 559-86.

17  [50] AR 569-70 (Plaintiff unable to temporarily perform the duties of a Dial A Ride

18  Driver position for 1-2 months.); AR 574 (Plaintiff unable to temporarily perform

19  the physical activities for a Dial A Ride Driver for three months because he failed

20  the PCE.).

21  [51] AR 575.

22  [52] AR 412 & 579-80.

23  [53] AR 404.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

analyst.[54] In May 2015, Dr. Chau approved Plaintiff to work in bookkeeper and receptionist's jobs.[55]

Here, the ALJ reviewed Dr. Chau's treatment notes and noted that Plaintiff was ambulatory without an assistive device.[56] The ALJ also noted that Dr. Chau's treatment notes showed Plaintiff was in no distress, without pain behavior, and had a slight limp in the right side of his gait.[57]

Plaintiff argues Dr. Chau opined many employment restrictions, including a complete inability to work.[58] However, the record reflects Dr. Chau temporarily opined Plaintiff could not work as a driver, and that after work hardening therapy for a phlebotomist was unsuccessful, opined Plaintiff could work in a more sedentary work environment as a receptionist or bookkeeper.[59] Plaintiff fails to point to anything in the record that shows a "complete inability to work."[60] In

---

[54] AR 402.

[55] AR 400.

[56] AR 114 (citing AR 395-419).

[57] AR 114 (citing AR 395).

[58] ECF No. 10 at 11.

[59] AR 400.

[60] Temporary limitations are not sufficient to meet the durational requirement for a finding of disability. *See* 20 C.F.R. § 416.905(a) (recognizing a claimant must have impairments expected to last for a continuous period of not less than 12

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

1

2

addition, Dr. Chau's treatment notes support an RFC equal to or less restrictive

than the RFC the ALJ crafted.[61]

Plaintiff's fails to establish the ALJ consequentially erred by failing to assign

a weight analysis to Dr. Chau's opinion.

4.    Dr. Oliver Higgs

Plaintiff also argues the ALJ erred in failing to assign weight to Dr. Higgs'

opinion.[62] Plaintiff is correct in that the ALJ failed to assign a weight to the opinion

of Dr. Higgs, however, any error is harmless.

Dr. Higgs treated Plaintiff from 2009 to 2010.[63] In 2009, Dr. Higgs

performed an arthroscopy of Plaintiff's right knee to repair a medial meniscus

tear.[64] On January 4, 2010, Dr. Higgs opined Plaintiff was able perform modified

duties from January 4, 2010 to present, with the following restrictions: never climb

---

months; 42 U.S.C. § 423(d)(1)(A); *Carmickle*, 533 F.3d at 1165 (affirming ALJ's

finding that treating physicians' short term excuse from work was not indicative of

"claimant's long term functioning.").

[61] AR 112 &118 *compare with* AR 400 & 575; *see Turner v. Comm'r Soc. Sec. Admin.*,

613 F.3d 1217, 1223 (9th Cir. 2010) (An ALJ need not provide reasons for rejecting

a physician's opinion where the ALJ incorporated them in the RFC.).

[62] ECF No. 10 at 11.

[63] AR 453-54, 466, & 472.

[64] AR 453-54.

ladders, squat, kneel, or crawl; occasionally twist, bend, or stoop; and no restriction when sit, stand, walk, reach, work above shoulders, keyboard, wrist, grasp, fine manipulation, and operate foot controls (left).[65] In May 2010, Dr. Higgs opined Plaintiff was temporarily unable to perform work as a Dial A Ride Driver for one month.[66] In July 2010, after an MRI showed a tear in the same meniscus, Dr. Higgs performed a second arthroscopy of the right knee, which debrided the medial meniscus and debrided the lateral meniscus. In September 2010, Dr. Higgs noted Plaintiff was doing better after his second knee surgery and that he anticipated releasing Plaintiff to full activities at work in October 2010.[67] By November 2010, Plaintiff had gone back to light duty work, and Dr. Higgs noted Plaintiff's symptoms were out of proportion with what he saw at the time of surgery and that he did not think there was anything else he could do for Plaintiff.[68]

The ALJ erred when she did not discuss Dr. Higgs' treatment history in her analysis.[69] However, any error was harmless. In conducting the harmless error inquiry, "we must consider whether the ALJ's failure to discuss the [evidence] was

---

[65] AR 455.

[66] AR 458.

[67] AR 470.

[68] AR 472.

[69] *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

inconsequential to the ultimate nondisability determination in the context of the record as a whole."[70] Here, Dr. Higgs opined temporary work restrictions before Plaintiff eventually returned to light duty work.[71] In addition, any opined restriction would not negate the ALJ's ultimate nondisability determination. Consequently, any error in failing to discuss Dr. Higgs' opinion was harmless.[72]

     5.   <u>Kirk Holle, P.T.</u>

Plaintiff also argues the ALJ erred in failing to provide a weight analysis of the Physical Capacities Evaluation (PCE) conducted by Mr. Holle. Plaintiff is correct in that the ALJ failed to assign a weight to the PCE, however, any error is harmless.

On November 21, 2011, Mr. Holle performed a PCE on Plaintiff.[73] The PCE demonstrated Plaintiff was able to sit for 30 to 45 minutes at a time, 8-hours in a day; stand for 15 to 30 minutes at a time, 4 hours in an 8-hour day; walk for 5 to 10 minutes at a time, 2 to 3 hours in an 8-hour day; lift 20 pounds from floor to waist occasionally, 25 pounds from waist to shoulder, and 15 pounds from shoulder to overhead; carry 10 pounds occasionally for 25 feet; and push with 35 pounds of

---

[70] *Molina*, 674 F.3d at 1122 (quotation marks omitted).

[71] *See* 20 C.F.R. § 416.905(a); 42 U.S.C. § 423(d)(1)(A); *Carmickle*, 533 F.3d at 1165.

[72] *See Molina*, 674 F.3d at 1122.

[73] AR 506-14.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

force and pull with 20 pounds of force occasionally.[74] Based on the results of the examination, Mr. Holle opined Plaintiff was able to work 8 hours per day in a job that requires sedentary to light physical demand.[75]

Testifying medical expert H.C. Alexander, II, M.D. gave the PCE little weight because it is not considered a reliable source, and in his experience as a rheumatologist, PCEs are very subjective.[76] After reviewing the longitudinal record, including the PCE, Dr. Alexander opined Plaintiff could stand up to 4 hours total in an 8-hour workday, up to 20 minutes at a time; walk up to two hours total in an 8-hour work day, up to 20 minutes at a time; and occasionally bend, stoop, and climb ramps and stairs, but never crouch crawl, knee, or climb ladders, ropes or scaffolds.[77] The ALJ gave Dr. Alexander's opinion great weight – Plaintiff does not challenge this.[78]

Plaintiff fails to show how these limitations are more restrictive than the limitations in the RFC.[79]

---

[74] AR 513.

[75] *Id.*

[76] AR 39.

[77] AR 31-34.

[78] AR 116.

[79]  *See Turner,* 613 F.3d at 1223.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

6.    <u>Amanda Friese, PA-C and William Kalichman, M.D.</u>

Plaintiff argues the ALJ erred in assigning any weight to Ms. Friese's and Dr. Kalichman's opinions.[80]

On November 30, 2015, Ms. Friese opined Plaintiff could return to work immediately with no restrictions.[81] Ms. Friese noted Plaintiff had both asthma and rheumatoid arthritis, and took Humera, which treats Plaintiff's RA by decreasing the response of his immune system. Ms. Friese also noted that Plaintiff taking Humera "caus[ed] him to be more susceptible to infection and also contributes to poor healing from infections."[82]

On September 23, 2016, Dr. Kalichman, who treated Plaintiff for bronchitis, opined Plaintiff should remain out of school/work until September 28, 2016.[83]

The ALJ gave great weight to Ms. Friese's and Dr. Kalichman's opinions because they were familiar with Plaintiff's limitations as his treating provider and their opinions were consistent with the objective medical evidence.[84] Plaintiff contends that Ms. Friese's and Dr. Kalichman's opinions "seem[] irrelevant" to the claim, thus do not warrant a weight analysis. However, beyond objecting that a

---

[80] ECF No. 10 at 12.

[81] AR 539.

[82] *Id.*

[83] AR 540.

[84] AR 116.

weight was assigned to Ms. Friese's and Dr. Kalichman's opinions, Plaintiff has not argued that the opinions were in error. The ALJ's decision "will only be disturbed if it is not supported by "substantial evidence or it is based on legal error."[85] And "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."[86] Plaintiff failed to identify a legal error with respect to the ALJ's weighing of Ms. Friese's and Dr. Kalichman's opinions.

**B.     Plaintiff's Symptom Reports: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[87] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[88] Here, the ALJ found Plaintiff's

---

[85] *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation marks omitted).

[86] *Burch v. Barnhard*, 400 F.3d 676, 679 (9th Cir. 2005).

[87] *Molina*, 674 F.3d at 1112.

[88] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

statements concerning the intensity, persistence, and limiting effects of his

symptoms inconsistent with the objective medical evidence and other evidence in

the record.[89]

Plaintiff argues the ALJ did not provide specific reasons to discount

Plaintiff's reported symptoms. However, the ALJ is not required to recite "magic

words" to indicate why she discounted Plaintiff's reported symptoms.[90] When

evidence reasonably supports confirming the ALJ's decision, the reviewing court

may not substitute its own judgment for that of the ALJ.[91] As to the ALJ's finding

that Plaintiff's symptom reports were inconsistent with the objective medical

evidence, symptom reports cannot be solely discounted on the grounds that they

were not fully corroborated by the objective medical evidence.[92] However, objective

medical evidence is a relevant factor in considering the severity of the reported

symptoms.[93] Here, the ALJ summarized the medical evidence, highlighting that

---

[89] AR 113.

[90] *See Magallanes*, 881 F.2d at 755  (The reviewing court is "not deprived of our

faculties for drawing specific legitimate references from the ALJ's opinion.").

[91] *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[92] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[93] *Id*. "Objective medical evidence" means signs, laboratory findings, or both. 20

C.F.R. § 416.902(k). In turn, "signs" is defined as:

one or more anatomical, physiological, or psychological abnormalities
that can be observed, apart from [the claimant's] statements

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 21

the examinations and imaging showed Plaintiff was ambulatory without assistive devices, mild reduced flexion of his wrist but no synovitis, limited motion in his right knee but a smooth gait and intact sensations, no evidence of nerve root compression, and normal range of motion of his back with diffused tenderness.[94] This was a relevant factor for the ALJ to consider.

The ALJ also accounted for the medical opinion evidence when weighing Plaintiff's symptom reports. The ALJ discussed the opinions of agency reviewing expert Dr. Staley and testifying expert Dr. Alexander, gave great weight to their opinions – opinions Plaintiff did not contest – and adopted most of their findings because they were consistent with the record as a whole.[95] Regarding Plaintiff's allegations of physical limitations, Dr. Staley opined Plaintiff was capable of light exertional work, could stand or walk up to 2 hours in an 8-hour day; sit up to 6

--------

(symptoms). Signs must be shown by medically clinical diagnostic techniques.

*Id*. § 416.902(l). Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence. 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[94] AR 364-65, 368, 370, 395, 545-46, & 555.

[95] AR 116.

hours in an 8-hour workday; occasionally balance stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequent handling and fingering; occasionally lift and/or carry 20 pounds; and frequently lift and/or carry 10 pounds.[96] As previously explained, Dr. Alexander opined similar limitations.[97] In short, the medical opinions did not support Plaintiff's subjective claim that he cannot engage in work within the limitations of his RFC assessment.[98]

The ALJ's decision to discount Plaintiff's reported symptoms is upheld on this record.

**C.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical failed to consider the limitations set forth by his providers and Plaintiff's symptom testimony. However, this argument merely restates Plaintiff's earlier allegations of error, which are not

---

[96] AR 97-98.

[97] AR 31-34.

[98] *Roberts v. Colvin*, No. 2:12-CV-01456-JO, 2013 WL 5819092, at *4 (D. Or. Oct. 29, 2013) (upholding the ALJ assessing the medical opinion evidence of agency reviewing experts when discounting the plaintiff's reported symptoms).

supported by the record.[99] Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[100]

### V.  Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 10th day of August 2020.


 s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

---

[99] Plaintiff also argues Dr. Alexander had incomplete evidence when he provided an RFC, thus his RFC was incomplete. However, Plaintiff does not challenge the great weight given to Dr. Alexander's opinion, thus, any challenges are waived. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

[100] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).